UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:24-CR-02-CHB-HAI |
| | ) | |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| TIMOTHY ASHLEY PADGETT, | ) | |
| | ) | |
| Defendant, | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

On referral from District Judge Boom (D.E. 16), the Court considers reported violations of supervised release conditions by Defendant Timothy Ashley Padgett.

**I.**

On December 30, 2005, District Judge Lacy H. Thornburg of the Western District of North Carolina entered a judgment against Defendant following a jury verdict of guilty on the first two counts of the indictment. D.E. 1-2 at 1 (the "North Carolina case"). Defendant was found guilty of violating 21 U.S.C. § 841(c) (possession of pseudoephedrine with intent to manufacture methamphetamine) and 21 U.S.C. § 846 (conspiracy to manufacture methamphetamine). *Id.* Defendant was originally sentenced to 262 months of imprisonment and a four-year term of supervised release. *Id.* at 2-3. During his prison term, on September 14, 2021, District Judge Boom entered judgment against Defendant after a plea of guilty to 18 U.S.C. § 1791(a)(2) (possession of contraband). *See* D.E. 31 in 6:20-CR-52-CHB-HAI (the "Kentucky case"). Defendant was sentenced to five months of incarceration to run consecutively to the sentence imposed by District Judge Thornburg followed by a two-year term of supervised release. *Id.* at 2-

1

3.  The North Carolina case was transferred to the Eastern District of Kentucky on January 17, 2024.  D.E. 1.

Defendant was released to begin his period of supervised release on October 3, 2023.  On January 31, 2024, Defendant stipulated to three violations of his terms of supervised release, including the unlawful use of methamphetamine, the unlawful possession of methamphetamine, and violation of Kentucky law by possessing a controlled substance and drug paraphernalia.  D.E. 5.  Defendant's supervised release was revoked, and he was sentenced to two sixteen-month terms of imprisonment to run concurrently in the North Carolina and Kentucky cases, followed by a four-year term of supervised release in the North Carolina case (along with no additional supervised release in the Kentucky case).  D.E. 9 at 5.  He was released on April 3, 2025.

On May 30, 2025, Judge Boom approved a modification of Defendant's conditions of release following a report from the U.S. Probation Office (the "USPO") that Defendant admitted to using methamphetamine and was arrested for reckless driving, failure to notify of an address change, failure to produce insurance card, and operating a motor vehicle under the influence.  D.E. 11.  The modified conditions required Defendant to participate in an inpatient treatment program and prohibited Defendant from operating a motor vehicle until he completed the inpatient treatment program.  *Id.*  He completed that inpatient treatment on July 27, 2025.

**II.**

On July 24, 2025, the USPO issued the Supervised Release Violation Report (the "Report") that initiated these proceedings.  The Report charges Defendant with two violations, both of which stem from a July 9, 2025, urine specimen that tested positive for methamphetamine use via both an instant testing device and national laboratory testing.  Violation # 1 alleges Defendant violated Mandatory Conditions #2 and #3 of his conditions of release, which prohibit Defendant from

unlawfully possessing and using any controlled substance.  This is a Grade C violation.  Violation # 2 alleges Defendant violated Mandatory Condition #1 of his conditions of release, which prohibits him from committing another federal state, or local crime, by possessing methamphetamine.  This is a Grade B violation.

The Court conducted an initial appearance on the violations alleged in the Report pursuant to Federal Rule of Criminal Procedure 32.1 on August 6, 2025.  D.E. 14.  During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id*.  At that time, the United States made an oral motion for detention; Defendant did not argue for release.  *Id*.  A final hearing was initially scheduled for September 8, 2025.  D.E. 21.  At the outset of the hearing, the government moved to continue the final hearing for three months and requested Defendant be released on the existing conditions during the interim period to demonstrate compliance.  *Id.*  The Court granted both motions and continued the final hearing to December 8, 2025.  *Id.*

On October 2, 2025, the USPO issued the first addendum to the Report, alleging two new violations.  Both of the new violations stem from a September 30 admission and urinalysis test confirming Defendant's use of methamphetamine and MDMA.  Violation #3 alleges Defendant violated Mandatory Conditions #2 and #3 of his conditions of release, which prohibit Defendant from unlawfully possessing and using any controlled substance.  This is a Grade C violation. Violation # 4 alleges Defendant violated Mandatory Condition #1 of his conditions of release, which prohibits him from committing another federal state, or local crime, by possessing methamphetamine and  MDMA.  Based on the first addendum, the Court issued a warrant for Defendant's arrest.  D.E. 23.

On January 13, 2026, the USPO issued the second addendum to the Report, alleging two more violations.  According to the second addendum, Defendant was arrested by the local police department in Morristown, Tennessee and charged with four misdemeanors: driving without a seatbelt, being a fugitive from justice, unlawful possession of drug paraphernalia, and criminal impersonation.  Violation #5 alleges Defendant violated Mandatory Condition #1 of his conditions of release by committing another federal, state, or local crime.  Given the charged conduct constituted misdemeanor crimes, this is a Grade C violation.  Violation #6 alleges Defendant violated Standard Condition #3, which prohibits Defendant from leaving the federal judicial district he is authorized to reside without prior permission from the Court or his probation officer. This is a Grade C violation.

Pursuant to the October 2025 arrest warrant, Defendant entered the custody of the U.S. Marshals and was transported back to the Eastern District of Kentucky on January 14, 2026.  On January 22, 2026, the Court conducted an initial appearance on the violations alleged in the two addenda to the Report pursuant to Federal Rule of Criminal Procedure 32.1.  D.E. 27.  During the hearing, Defendant again made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing.  *Id.*  At that time, the United States made an oral motion for detention; Defendant did not argue for release.  *Id*.

At the final hearing on March 13, 2026,[1] Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583.  D.E. 29.  Defendant waived a formal hearing and stipulated to the

---

[1] The final hearing was initially convened on February 4, 2026.  D.E. 28.  After defense counsel voiced concerns about Defendant's access to a prescription medication while at the Laurel County Correctional Center, the Court continued the hearing to allow the parties the opportunity to further investigate the matter.  In the interim period, the U.S. Marshals reported to the Court that, according to the jail, the LCCC did not provide inmates one of Defendant's previously prescribed medications and Defendant had refused to take the alternative provided.  During the March 13 hearing, Defendant and defense counsel confirmed this report.  The Court questioned Defendant about the effect of the lack of his medication on ability to understand the proceedings.  Although seemingly agitated without the medication, Defendant maintained that he was competent to proceed with the stipulation and demonstrated a detailed

violations set forth in the Report and its addenda. *Id*. The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id*. The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id*.

The Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G.§ 7B1.1(a)(3) .

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction carries a maximum period of thirty-six months of supervised release less any term of imprisonment imposed. *See* 18 U.S.C. § 3583(h).

**III.**

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was originally convicted of the Class C felony of possessing pseudoephedrine with intent to manufacture methamphetamine under 21 U.S.C. § 841(c) and the Class B felony of conspiracy to manufacture methamphetamine under 21 U.S.C. § 846. *See* 18 U.S.C § 3559(a). Based on the Class B felony, Defendant's conviction carries a thirty-six-month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

---

understanding of the charged violations and potential penalties. Defense counsel and counsel for the government agreed that they had no concerns about his competency or ability to proceed.

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b) .

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as Grade B violations with respect to Violations #2 and #4 and Grade C violations with respect to Violations # 1, # 3, # 5, and # 6. Given Defendant's criminal history of VI (the category at the time of his conviction in the Western District of North Carolina) and the Grade B violations, Defendant's range, under the Revocation Table of Chapter 7, is twenty-one to twenty-seven months. Consistent with the guidance of appellate courts, this Court takes the Guidelines-recommended sentence as its starting point and has remained cognizant of it in forming its recommended revocation sentence. *E.g., Molina-Martinez v. United States*, 136 S. Ct. 1338, 1345 (2016).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit has clearly and repeatedly equated drug use with drug possession, and Defendant's positive tests and admitted use in this context undoubtedly results in application

6

of 18 U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Neither side argues the exception applies, and nothing in the record supports its application.

Further, the presence of a Grade B violation means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

**IV.**

At the final hearing, the government argued for revocation with a sentence of imprisonment of twenty-one months followed by a one-year term of supervised release. Defense counsel argued for a below-Guidelines range term of imprisonment followed by no supervised release.

In support of its recommended sentence of imprisonment, the government acknowledged that Defendant did accept responsibility by stipulating to the violations, but contended that Defendant's rapid and repeated violative conduct restricted its ability to recommend a below-Guidelines sentence. The government emphasized how Defendant completely removed himself from supervision by leaving the state, constituting a major breach of the Court's trust. In support

7

of the term of supervised release, the government argued that Defendant's continued substance use poses a safety concern to himself and the community. While recognizing that supervised release has not been productive for Defendant in the past, the government explained that it believed a one-year period of supervision would allow Defendant the opportunity to demonstrate he can comply with the law.

Defense counsel argued that any term of imprisonment imposed upon revocation should be below the twenty-one-month bottom of Defendant's Guidelines range. Defense counsel acknowledged that Defendant had breached the Court's trust by committing four new violations after being released from custody in September. However, defense counsel contended that the new violations were inconsistent with Defendant's attitude upon release. Rather than being the result of malicious attempts to break the law, defense counsel explained that Defendant felt as if his opportunities in life, including his job, had been taken from him. Rather than seeking help, Defendant incorrectly chose to deal with his anxieties through further violative conduct. In arguing against further supervised release, defense counsel pointed to Defendant's independent nature and need for stability.

Defendant initially declined to allocute, but later in the hearing similarly requested the Court to refrain from imposing any additional supervised release.

## V.

The Court has reviewed the entire record, including the Report, its addenda, and its accompanying documents, as well as Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Through that consideration, the Court recommends that Defendant's supervision be

revoked and that he be sentenced to a term of imprisonment of twenty-one months followed by one year of supervised release.

In analyzing the 18 U.S.C. § 3553(a) factors, the Court first considers the nature and circumstances of the underlying offense and Defendant's history and characteristics. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that the nature and circumstances sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant's multiple instances of use of methamphetamine are closely related to the underlying offense and his prior supervised release violation. Defendant's case and subsequent violations have demonstrated that he is a risk of further criminal activity when he uses drugs. Accordingly, this factor supports a within-Guidelines sentence followed by additional supervised release.

The Court next considers the need to deter criminal conduct, and the need to protect the public. Defendant's criminal conduct has been inextricably intertwined with his continued drug use. Despite periods of imprisonment, Defendant continues to use controlled substances, resulting in further violations of the law. This factor necessitates a within-Guidelines sentence. Further, additional supervised release is necessary to ensure the public is protected from future criminal activity.

Another factor focuses on opportunities for education and treatment. Defendant has previously participated in RDAP and an inpatient substance abuse treatment program. He will continue to be able to receive mental health treatment during his term of imprisonment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the

defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant has committed several violations, with the first being drug use that occurred only weeks after his release from inpatient substance treatment. He has stipulated to using multiple drugs on multiple occasions. He left the jurisdiction, then engaged in further criminal activity in a different state. These characteristics of the violations constitute an aggravated breach of the Court's trust.

The Court must consider the need to avoid unwarranted sentencing disparities. Here, this goal is met by sentencing Defendant to a within-Guidelines term of imprisonment for his revocation conduct. The record does not provide any reason for the Court to impose a sentence below the bottom end of Defendant's Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the extent of the deviation). In fashioning its recommended sentence, the Court must consider whether an additional term of supervised release is warranted. In this case, the Court agrees with the government that additional supervision is necessary. Defendant needs structure and stability to prevent further drug use and criminal conduct after his release. Continued supervision satisfies this need.

For the reasons discussed herein and during the final hearing, the Court finds that a twenty-one-month period of imprisonment followed by one year of supervised release is sufficient, but not greater than necessary, to address the incorporated sentencing factors.

**VI.**

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS:**

(1)    Defendant be found guilty of the violations.

(2)    Revocation and imprisonment for a term of twenty-one months.

(3)    Imposition of a one-year period of supervised release on the same conditions from the prior Judgment (D.E. 10).

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on the District Judge's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 18th day of March, 2026.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge

11